FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 01, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DELISHA H., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:20-CV-00114-JTR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 16, 17. Attorney Christopher Dellert represents Delisha H. (Plaintiff); Special Assistant United States Attorney Katherine Watson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 5. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

# JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits on June 3, 2014, alleging disability since April 24, 2014, due to Postural Orthostatic Tachycardia Syndrome (POTS) and thoracic outlet syndrome. Tr. 71. The application was denied initially and upon reconsideration. Tr. 104-06, 108-09. Administrative Law Judge (ALJ) Laura Valente held hearings on July 12, 2016 and November 17, 2016. Tr. 37-69. The ALJ issued an unfavorable decision on February 22, 2017. Tr. 18-30. Plaintiff requested review of the ALJ's decision by the Appeals Council and the Appeals Council denied the request for review on October 12, 2017. Tr. 1-5. Plaintiff filed an action in this court on December 12, 2017 and on October 15, 2018, Chief Judge Thomas O. Rice issued an order remanding the claim for further proceedings. Tr. 1420-33.

ALJ Valente held a remand hearing on December 17, 2019, Tr. 1316-54, and issued a second unfavorable decision on January 16, 2020. Tr. 1288-1302. Plaintiff did not request review by the Appeals Council and the Appeals Council did not review the claim; the ALJ's 2020 decision is therefore the final decision of the Commissioner. Tr. 1286. Plaintiff filed this action for judicial review on March 23, 2020. ECF No. 1.

# STATEMENT OF FACTS

Plaintiff was born in 1976 and was 43 years old as of her date last insured in 2019. Tr. 1301. She has a Bachelor's degree in psychology and worked as a claims adjudicator for the Social Security Administration for 11 years. Tr. 235, 751. She developed significant left arm pain in a work-related injury, which was diagnosed as thoracic outlet syndrome. Tr. 322, 751. In 2014, likely in response to her thoracic outlet syndrome, she began having episodes of dizziness, lightheadedness, and syncope, which was eventually diagnosed as POTS. Tr. 492, 502, 506-07. In December 2014 she underwent decompression surgery for her thoracic outlet syndrome, which provided some relief of her symptoms, but she continued to have

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

neck and arm pain and occasional POTS symptoms. Tr. 882, 845-46, 3596. She was subsequently diagnosed with fibromyalgia, based on wide-spread pain and fatigue. Tr. 524.

## STANDARD OF REVIEW

The ALJ is responsible for determining the reliability of the claimant's allegations, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 404.1520(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On January 16, 2020, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 1288-1302.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date through her date last insured. Tr. 1290.

At step two, the ALJ determined Plaintiff had the following severe impairments: thoracic outlet syndrome, cervical degenerative disc disease, left knee tricompartmental arthosis and ACL reconstruction, headaches, fibromyalgia, and postural orthostatic tachycardia syndrome (POTS). Tr. 1291.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 1293-94.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform work with the following limitations:

> Lift/carry 10 pounds occasionally and less than 10 pounds frequently, stand/walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The claimant can occasionally climb ladders, ropes, or

> scaffolds. The claimant can frequently perform all other postural actions. The claimant can occasionally reach overhead. The claimant can occasionally push/pull with the left lower extremity, such as operation of foot pedals. The claimant must avoid concentrated exposure to hazards (such as dangerous moving machinery). The claimant must avoid concentrated exposure to extreme cold and extreme heat.
>
> The claimant has sufficient concentration to understand, remember, and carry out detailed and complex tasks, maintain persistence and pace in 2-hour increments with usual and customary breaks throughout an 8-hour workday.

Tr. 1294.

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a claims adjudicator, substance abuse counselor, and medical social worker. Tr. 1300-01.

The ALJ alternatively found at step five that, considering Plaintiff's age, education, work experience and residual functional capacity, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, specifically identifying the representative occupations of addresser, charge account clerk, and final assembler. Tr. 1301-02.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date last insured. Tr. 1302.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the Commissioner erred by (1) improperly weighing the opinions from Plaintiff's treating physicians; (2) improperly finding her mental health impairments to be non-severe at step two; (3) failing to account for

ORDER GRANTING PLAINTIFF'S MOTION . . . - 5

Plaintiff's inability to handle stress in the RFC; and (4) improperly assessing Plaintiff's subjective complaints.

## DISCUSSION

### 1. Treating Physicians' Medical Opinions

Plaintiff argues the ALJ erred in weighing the opinions from Plaintiff's treating doctors, Dr. Samuel Ortiz and Dr. James Byrd. ECF No. 16 at 4-8.

When a treating physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). The opinions from Dr. Ortiz and Dr. Byrd are contradicted by the state agency non-examining doctors; therefore, the specific and legitimate standard applies.

In August 2014, Dr. Ortiz completed a letter regarding Plaintiff's POTS diagnosis, noting her syncopal episodes and chronic lightheadedness. Tr. 710. He stated that she could not sit for more than 10 minutes without being lightheaded and was unable to stand or walk without assistance. *Id.* She was unable to bend over, reach, stoop, crouch, or kneel without having orthostatic manifestations. *Id.* He noted that she generally needed to be close to a recliner, sofa, or bed in order to improve her symptoms when they arose. *Id.* He stated she was unable to work due to her severe orthostatic hypotension, and that she already had had difficulty working full time due to her thoracic outlet syndrome. *Id.*

In August 2016, Dr. James Byrd, Plaintiff's rheumatologist, completed a letter opining Plaintiff could lift less than ten pounds occasionally, could stand and

1  walk for less than two hours, and could sit for less than six hours, due to
2  fibromyalgia and POTS. Tr. 1229-30. He further stated she was limited in all
3  manipulative activities and environmental exposures, and could never perform
4  postural activities. Tr. 1230-31. Dr. Byrd indicated that while treatment had
5  improved her condition some, she may never get complete resolution of her
6  symptoms. Tr. 1232. He closed by stating, "Given the severity of her symptoms I
7  do not feel she is able to work in any meaningful way." *Id.*

8  The ALJ gave these opinions little weight, finding they were partly based on
9  Plaintiff's thoracic outlet syndrome, POTS, and fibromyalgia, all of which the ALJ
10 found to have either improved or to be unsupported by the objective record
11 evidence. Tr. 1299. The ALJ further found the opinions relied in part of Plaintiff's
12 unreliable self-reports of symptoms, and that they infringed on an issue reserved to
13 the Commissioner. *Id.* Finally, the ALJ found Dr. Ortiz's opinion was not
14 supported by the essentially unremarkable exam and Plaintiff's report that she was
15 doing well and able to complete her activities of daily living without too much
16 trouble. Tr. 1300.

17 Plaintiff argues the ALJ improperly disregarded the opinions based on lack
18 of objective findings for fibromyalgia, and asserts that the ALJ's implication that
19 her impairments improved would seem to indicate that she was at least entitled to a
20 closed period of disability. ECF No. 16 at 6. Finally, Plaintiff argues the ALJ's
21 assessment of her subjective complaints was flawed, and therefore the rejection of
22 the medical opinions on the basis of her self-reports being unreliable was also
23 improper. *Id.* at 6. Defendant argues the ALJ appropriately assessed the opinions
24 and found them inconsistent with the lack of objective evidence to support the
25 extent of the assessed severity. ECF No. 17 at 11-12.

26 The Court finds the ALJ's reasoning is not supported by substantial evidence
27 and does not meet the specific and legitimate standard.
28 ///

*a. Thoracic outlet syndrome*

The ALJ found Dr. Ortiz and Dr. Byrd's opinions were due little weight because their opinions were partly based on Plaintiff's thoracic outlet syndrome despite thoracic outlet syndrome improving following surgery and physical exams regularly showing normal range of motion in the shoulders. Tr. 1299. The Court finds this rationale is not supported by substantial evidence. Plaintiff underwent decompression surgery for her thoracic outlet syndrome in December 2014, four months after Dr. Ortiz completed his opinion. Tr. 882. While the record reflects improvement in her symptoms following surgery, Plaintiff continued to have significant pain and numbness in her left arm and neck, as well as developing symptoms in her right arm. Tr. 891-92, 1015, 1171, 1189, 1284, 2107, 2118, 2579. Her physical therapist noted symptoms in her left hand were inconsistent and dependent on what tasks she engaged in. Tr. 1150, 1199. Improvement in symptoms is not synonymous with elimination of symptoms. Furthermore, the ALJ failed to address whether the improvement in Plaintiff's symptoms correlated to a change in her RFC.[1]

*b. POTS*

The ALJ partially discounted the opinions because they were based on Plaintiff's POTS diagnosis, which the ALJ found had extensive benign workup and was effectively managed with medication and cardiac rehab. Tr. 1299. Similar to her arm and neck symptoms, Plaintiff experienced some improvement to POTS following the reduction in her pain from thoracic outlet syndrome. Tr. 845, 854, 858. However, the record reflects she continued to experience dizziness and

---

[1] Dr. Byrd's opinion, completed a year and a half after Plaintiff's surgery, does not cite thoracic outlet syndrome; he noted fibromyalgia and POTS as the medical bases for the limitations. Tr. 1230, 1232. Therefore, this rationale does not apply to his opinion.

lightheadedness, with occasional intermittent syncopal episodes when she was stressed or in severe pain or engaged in rapid movements. Tr. 846, 854, 1188, 1274, 2132, 2365, 2491-92, 2716. Dr. Ortiz noted in 2018 that even though her condition had improved, she continued to have some manifestations and he anticipated she would continue to have them in the years to come, though he was unable to predict when they would occur. Tr. 3596. Because Plaintiff continued to experience difficulties, the Court finds the ALJ's rationale is not supported by substantial evidence.

With respect to the benign workup, the cardiac findings cited by the ALJ did not indicate that POTS was not an established and accepted condition. Normal cardiac findings appear to have helped establish that her condition was indeed orthostatic hypotension as opposed to some problem with her heart. Tr. 368, 497, 708, 794. All of her treating providers agree that POTS is an established condition, and the ALJ found it to be a severe medically determinable impairment. Therefore, it is unclear what the ALJ considered to be the significance of the benign cardiac workup. This is not a specific and legitimate basis for discounting the opinions of the treating doctors.

*c. Objective findings*

The ALJ found the "relatively unremarkable objective findings" did not corroborate Plaintiff's self-reports of symptoms to her providers, and that the medical opinions were out of proportion to the benign longitudinal exam findings. Tr. 1299. Referencing her earlier discussion of the objective findings, the ALJ noted records indicating Plaintiff routinely presented in no acute distress, fully alert/oriented, had normal gait and ambulated without difficulty, had grossly normal neurologic functioning, and had full range of motion and normal muscle bulk and tone. Tr. 1295-96, 1299.

The consistency of a medical opinion with the record as a whole is a legitimate factor for an ALJ to consider. 20 C.F.R. § 404.1527(c)(4). A conflict

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

between treatment notes and a treating provider's opinion may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider. *See Molina v. Astrue,* 674 F.3d 1104, 1111-12 (9th Cir. 2012). However, substantial evidence does not support the ALJ's characterization of the objective findings as "relatively unremarkable."

     Dr. Byrd consistently noted Plaintiff presented with classic fibromyalgia symptoms and greater than 11 tender points. Tr. 703, 796, 851, 897, 932, 957, 971, 1270, 1634, 1648, 1830-31, 1833, 1841, 2048, 2062, 2430, 2647-48, 3526-27, 3534, 3550, 3564. Plaintiff's chiropractor and physical therapist regularly documented findings supportive of her pain complaints, including positive straight leg raise tests, asymmetry and misalignment, muscle spasms, and various other objective measures. Tr. 1024, 1036-37, 1047-48, 1071, 1112, 1141-42, 1146, 2136-37, 2170, 2174, 2178, 2182, 2186, 2190, 2194, 2198, 2202, 2235, 2239, 2243-44, 2248, 2252, 2256, 2260, 2264, 2268, 2272, 2276, 2309, 2313, 2321, 2792-96, 2836, 2840, 2844, 2848, 2852, 2855-56. The ALJ's conclusion that there was not objective evidence to support the opinions cannot be upheld.

     Furthermore, the Court takes note that fibromyalgia is not a condition that generally presents with extensive objective findings. *See generally*, *Revels v. Berryhill*, 874 F.3d 648, 656-57 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004); Social Security Ruling 12-2p. It is not clear that the normal or unremarkable exam findings identified by the ALJ, such as no neurological deficits and presenting in no acute distress, have any bearing on the existence or severity of Plaintiff's conditions, and the ALJ cited to no medical source that indicated as much. Therefore, this was not a specific and legitimate basis to reject Dr. Ortiz and Dr. Byrd's opinions.

     *d. Plaintiff's self-reports*

     The ALJ found Dr. Ortiz and Dr. Byrd relied in part on Plaintiff's unreliable self-reported symptoms and limitations. Tr. 1299. A doctor's opinion may be

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

discounted if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ did not offer any support for her conclusion that the doctors relied more on Plaintiff's self-reports than on their treatment, observations, and professional judgments. This rationale is not based on substantial evidence.

*e. Issue reserved to the Commissioner*

The ALJ found Dr. Ortiz and Dr. Byrd's opinions infringed upon an issue reserved to the Commissioner, namely whether Plaintiff could perform her past work or other work. Tr. 1299. The regulations make clear that an opinion on an issue reserved to the Commissioner, such as whether a person is able to work, is not due "any special significance." 20 C.F.R. § 404.1527(d). Therefore, the ALJ did not err in disregarding those portions of the doctors' opinions that specifically comment on Plaintiff's ability to work. However, the medical opinions both comment on work-related factors distinct from their conclusions that Plaintiff is not able to work. The fact that they also commented on the ultimate question of disability does not negate the substance of their other comments.

*f. Unremarkable exam and ability to complete activities*

Finally, the ALJ found Dr. Ortiz's opinion was not supported by the "essentially unremarkable" exam and Plaintiff's report that she was doing well and able to complete her activities of daily living without too much trouble. Tr. 1300. The citations provided by the ALJ were from exams a year after Dr. Ortiz completed his opinion. Tr. 854 (7/10/15), 863 (8/26/15). In July 2015, when Plaintiff's cardiologist noted she was able to complete her activities without too much trouble, the provider noted her POTS symptoms were much improved, but she was still occasionally getting symptoms when she was overheated or had

1  increasing pain from her thoracic outlet syndrome, and that she was aware of the
2  triggering activities. Tr. 856. In August 2015, Dr. Ortiz noted an essentially
3  unremarkable exam apart from tenderness in her low back and that she was mildly
4  orthostatic when she sat up after the exam. Tr. 863-64. He noted her POTS was
5  much improved since her surgery for thoracic outlet syndrome. Tr. 864. To the
6  extent the ALJ implied these normal results and comments were contemporaneous
7  with Dr. Ortiz's August 2014 opinion, and thus a basis for rejecting it, the Court
8  finds such a conclusion is not supported by substantial evidence. As noted above,
9  the ALJ failed to discuss whether Plaintiff's improvement following her thoracic
10 outlet syndrome warranted a change in the RFC.

**2.    Step 2**

Plaintiff argues the ALJ erred in finding her mental health impairments to be non-severe at step two, and improperly rejected the opinions from the examining and non-examining psychological doctors. ECF No. 16 at 8-18.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted).

The ALJ found depression and generalized anxiety to be non-severe impairments. Tr. 1291. In doing so, she noted Plaintiff's minimal treatment for mental health conditions, largely unremarkable mental status findings, and that the mental symptoms appeared largely secondary to situational stressors. Tr. 1291-92. The ALJ gave significant weight to the 2014 psychological consultative exam

conducted by Dr. MacLennan and less weight to the state agency reviewing doctors and the 2018 consultative exam report from Dr. Metoyer. Tr. 1292-93.

Plaintiff argues the ALJ improperly rejected all of the opinions regarding Plaintiff's mental health, and thus the step two finding was not supported by substantial evidence. ECF No. 16 at 8-18. Defendant argues the ALJ reasonably considered the evidence and that her finding of non-severe mental impairments is supported by substantial evidence. ECF No. 17 at 13-21. The Court finds the ALJ reasonably interpreted the evidence and offered sufficient reasons for rejecting the opinions that assessed limitations on Plaintiff's mental functioning.

*a. Dr. MacLennan*

In 2014, Plaintiff attended a psychological consultative exam with Dr. Catherine MacLennan. Tr. 749-54. Dr. MacLennan diagnosed major depressive disorder secondary to a health condition, and stated that there likely would be times Plaintiff was less capable because of her weakness, dizziness, and medication side effects, but Plaintiff's psychological problems would not by themselves prevent her from working. *Id.* The ALJ gave this opinion significant weight, finding that Plaintiff's minimal treatment and unremarkable mental status exams throughout the record supported the conclusion that her mental impairments were not severe. Tr. 1292.

Plaintiff argues the ALJ erred by giving this opinion significant weight, yet failing to find major depression to be a severe impairment or including any limitations on mental functioning in the RFC. ECF No. 16 at 10-12. Defendant argues the opinion does not contain any functional limitations and the ALJ reasonably interpreted the opinion. ECF No. 17 at 14-15. The Court finds the ALJ did not err. Dr. MacLennan did not assess any limitations on Plaintiff's cognitive or social abilities and did not state that her mental impairments were severe enough to impair her ability to work. Tr. 749-54. Therefore, the ALJ did not reject the opinion.

*b. Dr. Metoyer*

In 2018, Plaintiff attended another consultative psychological exam, with Dr. Patrick Metoyer. Tr. 1853-57. Dr. Metoyer assessed Plaintiff with generalized anxiety disorder and major depressive disorder. He found she had some mild to moderate impairment in interacting with others and completing a normal workday and stated her ability to deal with usual stress would be markedly impaired if a job involved persistent activity, complex tasks, task pressure, or interacting with individuals. Tr. 1857.

The ALJ gave this opinion little weight, finding it was not supported by the normal testing and finding it inconsistent with longitudinal evidence of unremarkable presentation and evidence indicating Plaintiff's mental disorders were effectively managed with medication. Tr. 1293. The ALJ further noted Dr. Metoyer was unaware of Plaintiff's longitudinal presentation because he reviewed limited records, and that he relied in part on Plaintiff's unreliable self-reports. *Id.*

Plaintiff argues the ALJ improperly substituted her own interpretation of Dr. Metoyer's exam findings and asserts the opinion is consistent with Dr. MacLennan and the state agency opinions, and thus is not inconsistent with the longitudinal evidence. ECF No. 16 at 14. She further argues that the ALJ's assessment of her subjective complaints was flawed, and it was Social Security who provided Dr. Metoyer with limited records. *Id.* at 14-16. Defendant argues the ALJ's reasons were all legitimate and supported by substantial evidence. ECF No. 17 at 17-21.

The Court finds the ALJ did not err. When an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Dr. Metoyer's opinion is contradicted by Dr. MacLennan.

An ALJ may legitimately consider an opinion's consistency with the record and the source's familiarity with the record. 20 C.F.R. § 404.1527(c). While

1  Plaintiff offers an alternative interpretation of the record, the ALJ's interpretation
2  was reasonable.
3       *c. State agency reviewing doctors*
4       The state agency doctors who reviewed Plaintiff's file at the early
5  administrative stages concluded her mental impairments were severe, and assessed
6  some varying limitations, including avoiding speed and precision, working at a
7  slowed pace, and needing to avoid more than occasional contact with the public.
8  Tr. 76, 84, 95-96, 100-01. In 2018, state agency reviewing doctors found
9  depression and anxiety to be severe impairments, but noted Plaintiff had no
10 cognitive limits and retained the capacity to carry out complex tasks, and was
11 limited only to occasional superficial interactions with the public. Tr. 1389, 1394-
12 95, 1404-05, 1410.
13      The ALJ stated she gave these opinions less weight than she gave to Dr.
14 MacLennan, noting that the same rationale for finding mental health impairments
15 to be non-severe applied to the state agency doctors as well. Tr. 1292. Plaintiff
16 argues the ALJ failed to offer sufficient reasons for rejecting these opinions. ECF
17 No. 16 at 17. Defendant argues that the ALJ reasonably relied on the evidence of
18 normal mental status exams and other unremarkable clinical findings in
19 determining that Plaintiff's mental health impairments were non-severe. ECF No.
20 17 at 15-17.
21      For the reasons discussed above, the Court finds the ALJ did not err, and
22 reasonably considered the opinions' consistency with the record as a whole in
23 finding the opinions were due less weight.
24 **3.    Plaintiff's subjective allegations**
25      Plaintiff contends the ALJ erred by improperly rejecting her subjective
26 complaints. ECF No. 16 at 18-20.
27      It is the province of the ALJ to make determinations regarding the
28 reliability of a claimant's allegations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

      The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, she found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 1295. Specifically, the ALJ found Plaintiff's complaints were inconsistent with the benign examination findings, evidence that her POTS was well-controlled with medication and her thoracic outlet syndrome improved following surgery, and several other discrepancies in the record. Tr. 1295-98.

      An ALJ may reasonably consider a claimant's statements to the Agency and to her medical providers and consider the consistency of such statements. Social Security Ruling 16-3p. The ALJ noted that Plaintiff's testimony concerning the frequency of her syncopal episodes, particularly during the summer, conflicted with the medical evidence in the file, which documented far fewer episodes. Tr. 1297. The Court finds the ALJ reasonably found Plaintiff's testimony on this topic to be less than fully reliable.

///

However, due to the ALJ's errors in evaluating the medical opinion evidence, on remand the ALJ shall also re-evaluate Plaintiff's statements and testimony.[2] In reassessing her subjective complaints, the ALJ will also consider whether to credit her allegations regarding stress intolerance.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate Plaintiff's subjective complaints and the medical evidence, formulate a new RFC, obtain supplemental testimony from a vocational expert, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

///
///
///
///
///
///

---

[2] The Court notes the ALJ used much of the same deficient rationale in discounting Plaintiff's subjective statements as she used in rejecting Dr. Ortiz and Dr. Byrd's opinions.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED March 1, 2021.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE